# Exhibit 2

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Western District of Texas

| | |
|---|---|
| Gentex Corporation and Indigo Technologies, LLC | ) |
| *Plaintiff* | ) |
| v. | ) |
| Meta Platforms, Inc. and Meta Platforms Technologies, LLC | ) |
| *Defendant* | ) |

Civil Action No.   6:21-cv-00755-ADA

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                           Eric Foxlin

*(Name of person to whom this subpoena is directed)*

❏ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Date and Time: |
|---|---|
| | |

The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Exhibits A–B. Documents should be produced no later than June 8, 2022 at 5:00 pm to Akshay Deoras, Kirkland & Ellis LLP, 555 California Street, 27th Floor, San Francisco, CA 94104 or mutually agreed upon method and location.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   05/09/2022

CLERK OF COURT

OR

_____          /s/ Akshay S. Deoras
*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Meta Platforms, Inc. and Meta Platforms Technologies, LLC _____ , who issues or requests this subpoena, are:

Akshay Deoras, Kirkland & Ellis LLP, 555 California Street, San Francisco, CA 94104, akshay.deoras@kirkland.com, (415) 439 1416

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  6:21-cv-00755-ADA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
        **(i)** is a party or a party's officer; or
        **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
        **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
        **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

        **(i)** fails to allow a reasonable time to comply;
        **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
        **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
        **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

        **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
        **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
        **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
        **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
        **(i)** expressly make the claim; and
        **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**EXHIBIT A**
**DEFINITIONS**

The words and phrases used herein shall have the meanings ascribed to them under the Federal Rules of Civil Procedure and the Civil Local Rules of the United States District Court for the Western District of Texas.  In addition, as used herein, the following terms shall have the meanings set forth below:

1.       "Gentex" means Gentex Corporation and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns thereof, and all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other Persons, acting or purporting to act under Gentex's control or on Gentex's behalf, and/or under the control of or on behalf of Gentex's present and former parent companies, subsidiaries and affiliates, predecessors and successors in interest, present and former directors, officers, employees, attorneys, agents, and any other representatives.

2.       "Indigo" means Indigo Technologies, LLC. and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns thereof, and all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other Persons, acting or purporting to act under Indigo's control or on Indigo's behalf, and/or under the control of or on behalf of Indigo's present and former parent companies, subsidiaries and affiliates, predecessors and successors in interest, present and former directors, officers, employees, attorneys, agents, and any other representatives.

3.       "Thales" means Thales Visionix, Inc. and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors, and assigns thereof, and

all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other persons, acting or purporting to act under Thales's control or on Thales's behalf, and/or under the control of or on behalf of Thales's present and former parent companies, subsidiaries and affiliates, predecessors and successors in interest, present and former directors, officers, employees, attorneys, agents, and any other representatives.

4.      "InterSense" means InterSense, Inc. and all present and former parents, subsidiaries, and affiliates thereof, all divisions, predecessors, successors and assigns thereof, and all directors, officers, employees, agents, consultants, representatives, or persons acting or purporting to act on behalf of, or under the control of, any of the foregoing entities; and all other persons, acting or purporting to act under InterSense's control or on InterSense's behalf and/or under the control of or on behalf of InterSense's present and former parent companies, subsidiaries and affiliates, attorneys, agents, and any other representative.

5.      "Plaintiffs" means Gentex, Indigo, and Thales, collectively.

6.      "You," or "Your" means Eric Foxlin and any person or entity acting on Your behalf, including without limitation any current or former attorneys, associates, partners, members, principles, shareholders, employees, affiliates, or other agents.

7.      "Defendants" or "Meta" means Meta Platforms, Inc. and Meta Platforms Technologies LLC.

8.      The "'068 Patent" refers to United States Patent No. 6,757,068.

9.      The "'632 Patent" refers to United States Patent No. 6,922,632.

10.     The "'648 Patent" refers to United States Patent No. 7,301,648.

11.     The "'253 Patent" refers to United States Patent No. 7,725,253.

12.     The "'024 Patent" refers to United States Patent No. 8,224,024.

13.     "Patents-in-Suit" refers to the '068, '632, '648, '253, and '024 Patents, collectively, and any other patents asserted by Plaintiffs, or that Plaintiffs otherwise allege is infringed or practiced, in this action.

14.     "Related Patent" means any patent or patent application of any type, foreign or domestic, that share an earliest effective filing date (in whole or part) with any one or more of the Asserted Patents, including but not limited to any continuation, continuation-in-part, divisional, file-wrapper continuation, reexamination proceeding, reissue, abandoned application, foreign counterpart, PCT application, or any patents or applications that claim priority to any of the applications in the chain of applications that led to the Asserted Patents or from which any one or more of the Asserted Patents claim priority.

15.     "Instrumentality" means any system, apparatus, product, device, process, method, act, or other instrumentality.

16.     "VR/Motion Tracking Patents" includes any patent or patent application of any type, foreign or domestic, (a) on which Eric Foxlin is a named inventor, or (b) that relates to the field of virtual reality or motion tracking technologies or any other technologies that either party contends, or has contended, are comparable or analogous to the technology claimed in the Patents-in-Suit.

17.     "Asserted Priority Date" means October 4, 2005 for the '024 Patent; January 28, 2000 for the '068 and '648 Patents; and August 9, 2002 for the '632 and '253 Patents.

18.     "Prior Art" means all documents, information, or acts that qualify or might be argued to qualify as prior art under any section or subsection of 35 U.S.C. §§ 102 and 103, or any

system, method, apparatus, publication, patent, or use that has been cited to you by any person as prior art.

19.    "Accused Products" means Oculus Rift S, Oculus Quest, and Oculus Quest 2.

20.    "Litigation" means *Gentex Corporation and Indigo Technologies, LLC v Meta Platforms, Inc. and Meta Platforms Technologies, LLC*, Case No. 6:21-cv-00755, pending in the District Court for the Western District of Texas (or in such other venue as the case may be transferred).

21.    "Document" or "documents" means documents and things as broadly defined in Rule 34 of the Federal Rules of Civil Procedure, and includes papers of all kinds and non-paper information storage means, including by way of example and without limitation, originals and copies, however made, of schematics, diagrams, software and/or hardware specifications, architecture design, device layout, other technical documentation, letters, memoranda, notes, computer generated data, calendars, records, minutes, studies, reports, notebooks, messages, telegrams, ledgers, legal instruments, agreements, drawings, sketches, graphs, prints, hand-written notes, rough drafts, secretarial notes, work pads, diaries, films, tapes, videotapes, pictures, photographs, books, pamphlets, publications, advertisements, sales literature, brochures, manuals, price lists, announcements, electronic mail messages, or any other writings, records, or tangible objects produced or reproduced mechanically, electrically, electronically, photographically, or chemically. This definition is subject to any order regarding document discovery to be agreed upon by the parties and/or ordered by the Court.

22.    "Concerning," "referring," "relating to," or any derivation thereof means, without limitation, consisting of, constituting, containing, mentioning, describing, summarizing, evidencing, listing, indicating, analyzing, explaining, supporting, undermining, contradicting,

pertaining to, prepared in connection with, used in preparation for, or being in any way legally, logically, or factually connected with the matter discussed.

23.     "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses or documents that otherwise might be construed to be outside of its scope.

24.     "All," "any," and "each," as used herein, shall be construed to mean "each and every."

25.     "Including" (and the like) means including, without limitation.

26.     The use of the singular form of any word includes the plural and vice-versa and any verbs encompass all tenses.

27.     "Communication(s)" means any oral, written, or other contact between two or more Persons or Entities by which any information or knowledge of any nature is transmitted or conveyed or attempted to be transmitted or conveyed, including letters, memoranda, telegrams, telefaxes, telecopies, telexes or emails, text messages, face-to-face meetings, telephone conversations, voicemails, answering machine messages, and telephonic notes.

28.     "Person(s)" means any natural person, corporation, business trust, estate, trust, partnership (limited or general), firm, proprietorship, limited liability company, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

29.     The words "each" and "every" shall be construed to mean "each and every."

## **INSTRUCTIONS**

These requests shall apply to all items (e.g., documents or things) in your possession, custody, or control at the present time, as well as all items that come into your possession, custody or control.

1.      Documents shall be produced as kept in the usual course of business.  In producing documents, all documents that are physically attached to each other in files or other means of storage (including electronic means) must be left so attached.  Documents that are segregated or separated from other documents, whether by inclusion in binders, files or subfiles, or by use of dividers, tabs or any other method, must be so segregated or separated and the binders, files, subfiles, dividers, tabs or other means of separation must be copied if there any markings or writing thereon.  Documents are to be produced in the manner in which they are maintained.

2.      Each document is to be produced along with all non-identical drafts thereof in their entirety, without abbreviation or redaction, and as maintained in the ordinary course of business. If multiple copies of a document exist, please produce every copy with notations or markings of any sort that do not appear on other copies.

3.      If no documents are responsive to a particular request, state that no responsive documents exist.

4.      For any responsive items (e.g., documents or things) that have been lost, destroyed, withheld from production, or redacted, for any reason, you shall provide a written statement identifying the responsive items destroyed and when they were destroyed.

5.      More than one request herein may seek the same documents.  The presence of such duplication is not to be interpreted to narrow or limit the normal interpretation placed upon each individual request.  Where a Document is requested by more than one request, only one copy of it need be produced.  However, You should produce all non-identical copies of all Documents requested herein.

6.      If You claim any form of privilege or discovery protection as a ground for not producing or for redacting any document, within thirty (30) days of service of the subpoena,

provide a description of the basis of the claim and all information necessary to assess the claim, including the following: (a) the type of document; (b) the author of the document; (c) all recipients of the document; (d) the date of the document; (e) the general subject matter of the document; and (f) the privilege asserted.

7.      If You object to a request, or any part of a request, you are to produce all document to which your objection does not apply and specifically state the extent to which You have narrowed Your response.

8.      If, in responding to these requests, You claim any ambiguity in either a request or a definition or instruction applicable thereto, identify in Your response the language You consider ambiguous and state the interpretation You are using in responding.

9.      All documents requested are to be produced in the same file or other organizational environment in which they are maintained.  For example, a document that is part of a file, docket, or other grouping should be physically produced together with all other documents from said file, docket or grouping, in the same order or manner of arrangement as in the original.

10.      To the extent that You produce any software or Source Code, such software or Source Code shall be accompanied by all related Documentation, comments, or other explanatory materials and produced in the native format in which such code and accompanying materials are kept in the ordinary course of Your business.

11.      Your production shall be subject to the Stipulated Protective Order entered in *Gentex Corp. v. Meta Platforms, Inc.*, C.A. No. 6:21-cv-00755-ADA (W.D. Tex.).  *See* Exhibit B.

## REQUESTS FOR DOCUMENTS

**REQUEST NO. 1:**

All Documents, including complete notebooks and lab notebooks, relating to the conception, reduction to practice, or diligence to reduce to practice the subject matter disclosed, described, or claimed in any of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 2:**

All Documents relating to the drafting or prosecution of the Patents-in-Suit or any Related Patent, including without limitation all drafts, notes, drawings, sketches, or disclosures.

**REQUEST NO. 3:**

All Documents relating to any meaning, interpretation, application, or claim construction of any claims or claim terms in the Patents-in-Suit.

**REQUEST NO. 4:**

All Prior Art or potential Prior Art relating to the Patents-in-Suit or any Related Patent, including any search reports or prior art identified by any third party relating to the Patents-in-Suit.

**REQUEST NO. 5:**

All Documents relating to any prior use, publication, knowledge, sale, offer to sell, or importation of any product or process embodying all or part of any of the subject matter disclosed, described, or claimed in any of the Patents-in-Suit.

**REQUEST NO. 6:**

All Documents relating to the novelty or lack of novelty, or obviousness or non-obviousness, of any of the claims of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 7:**

All Documents relating to any alleged advantage or improvement provided by the subject matter disclosed, described, or claimed in any of the Patents-in-Suit.

**REQUEST NO. 8:**

Documents sufficient to identify every Person, including every employee, agent, firm, and attorney, who was involved in the prosecution of the Patents-in-Suit, including Documents identifying the roles and dates of involvement for each Person.

**REQUEST NO. 9:**

All Documents and Communications relating to Your decision to submit or not submit prior art to the U.S. Patent Office or any foreign patent office in regards to the Patents-in-Suit or any Related Patent.

**REQUEST NO. 10:**

All Documents relating to any contributions made by You or any other Person to the subject matter disclosed, described, or claimed in the Patents-in-Suit.

**REQUEST NO. 11:**

All Documents relating to the ownership of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 12:**

All Communications regarding the subject matter of the Patents-in-Suit or this Litigation, including but not limited to Communications with any Plaintiff, InterSense, or their attorneys or representatives.

**REQUEST NO. 13:**

All Documents showing the development or experimental use of any prototype, product, or apparatus that incorporates or embodies the subject matter described, disclosed, or claimed by the Patents-in-Suit.

**REQUEST NO. 14:**

All Documents created or drafted by You relating to the subject matter claimed in the Patents-in-Suit, including technical articles, presentations, notes, notebooks, personnel records,

employment agreements, assignment agreements, non-disclosure agreements, performance appraisals, invention disclosures, emails, correspondence, memoranda, and drawings.

**REQUEST NO. 15:**

All Documents relating to the prosecution of any Related Patent to the Patents-in-Suit, including the file histories, any and all translations of such foreign counterparts, foreign priority documents, and any associated internal or external correspondence or memoranda.

**REQUEST NO. 16:**

All Documents relating to this Litigation or any other litigation or proceeding concerning the Patents-in-Suit or any Related Patents, or in which you have provided any oral or written testimony, declaration, or expert report.

**REQUEST NO. 17:**

All Documents relating to any Accused Product, including but not limited to documents relating to any Plaintiff's claims of infringement of the Patents-in-Suit by any Accused Product.

**REQUEST NO. 18:**

All Documents relating to any valuation or assessment of, or royalties or fees requested, paid, or owed for, the Patents-in-Suit or any Related Patent or VR/Motion Tracking Patent.

**REQUEST NO. 19:**

All Documents relating to the licensing or enforcement of the Patents-in-Suit or any Related Patent.

**REQUEST NO. 20:**

All Documents relating to the relationship between You and any Plaintiff, including any consulting, engagement, joint development or defense agreements, and any payments or invoices.

**REQUEST NO. 21:**

All Documents relating to the relationship between You and InterSense.

**REQUEST NO. 22:**

All Documents relating to any products developed, manufactured, or sold by InterSense, Massachusetts Institute of Technology, or any other Person that embody or practice any of the Patents-in-Suit (or any part of the Patents-in-Suit), including the IS-300, IS-600, IS-900, InertiaCube, InterTrax, IS-1200 Vis-Tracker, and IS-1200 SelfTracker systems and any versions of these systems.

**REQUEST NO. 23:**

Documents sufficient to show any financial interest You have in, or payments you have received or requested in relation to, any Plaintiff, the Patents-in-Suit or any Related Patents or VR/Motion Tracking Patents, or this Litigation, including any stocks, bonds, options, offered payment, or other interests.

**REQUEST NO. 24:**

Documents sufficient to show the total amount, in U.S. dollars, any Plaintiff has paid You including, but not limited to any payment or compensation You received or are receiving from any Plaintiff Relating to the Patents-in-Suit or any Related Patents or this Litigation.

**REQUEST NO. 25:**

All Documents and Things concerning each Instrumentality made or sold by any Plaintiff, Defendants, or any third party, or any license under any of the Patents-in-Suit that incorporates or embodies the subject matter described, disclosed, or claimed in the Patents-in-Suit.

**REQUEST NO. 26:**

All Documents, Communications, and Things concerning any actual or potential contract, indemnity agreement, understanding, assignment, license, sublicense, covenant-not-to-sue, grant of a right to practice, settlement agreement, pension, retirement agreement, severance agreement, whether oral or written, that may influence Your current relationship with each Plaintiff, and any

Related negotiations, including without limitation agreements that require You to cooperate with any Plaintiff in connection with legal proceedings such as this Litigation.

**REQUEST NO. 27:**

All Documents, Communications, and Things concerning the state of the art of the field(s) of virtual reality and augmented reality, and the subject matter of the Patents-in-Suit, as of the Asserted Priority Date of each of the Patents-in-Suit.

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| GENTEX CORPORATION and INDIGO TECHNOLOGIES, LLC,<br><br>       Plaintiffs,<br><br>THALES VISIONIX, INC.,<br><br>       Involuntary Plaintiff,<br><br>   v.<br><br>FACEBOOK, INC. and FACEBOOK TECHNOLOGIES, LLC,<br><br>       Defendants. | Case No. 6:21-cv-00755-ADA<br><br>**JURY TRIAL DEMANDED** |

## AGREED PROTECTIVE ORDER

WHEREAS, Plaintiffs Gentex Corporation ("Gentex") and Indigo Technologies, LLC ("Indigo"), Involuntary Plaintiff Thales Visionix, Inc., and Defendants Meta Platforms, Inc.[1] ("Meta") and Facebook Technologies, LLC ("Facebook Techs."), hereafter referred to as "the Parties," believe that certain information that is or will be encompassed by discovery demands by the Parties involves the production or disclosure of trade secrets, confidential business information, or other proprietary information;

WHEREAS, the Parties seek a protective order limiting disclosure thereof in accordance with Federal Rule of Civil Procedure 26(c):

THEREFORE, it is hereby agreed among the Parties and ORDERED that:

---

[1] Effective October 28, 2021, named defendant Facebook, Inc.'s name is now Meta Platforms, Inc.

1.     Each Party may designate as confidential for protection under this Order, in whole or in part, any document, information or material that constitutes or includes, in whole or in part, confidential or proprietary information or trade secrets of the Party or a Third Party to whom the Party reasonably believes it owes an obligation of confidentiality with respect to such document, information or material, or the disclosure of which may cause harm to a Party or non-Party ("Protected Material"). Protected Material shall be designated by the Party producing it by affixing a legend or stamp on such document, information or material as follows: "CONFIDENTIAL." The word "CONFIDENTIAL" shall be placed clearly on each page of the Protected Material (except deposition and hearing transcripts and natively produced documents) for which such protection is sought. For deposition and hearing transcripts, the word "CONFIDENTIAL" shall be placed on the cover page of the transcript (if not already present on the cover page of the transcript when received from the court reporter) by each attorney receiving a copy of the transcript after that attorney receives notice of the designation of some or all of that transcript as "CONFIDENTIAL." For natively produced Protected Material, the word "CONFIDENTIAL" shall be placed in the filename of each such natively produced document, and shall be included on any slipsheets when produced. Further, any Party when printing such natively produced Protected Material must affix the word "CONFIDENTIAL" to each page of any printed copy thereof.

2.     Any document produced before issuance of this Order, including pursuant to the Court's Order Governing Proceedings - Patent Case, with the designation "Confidential" or the like shall receive the same treatment as if designated CONFIDENTIAL under this order and any such documents produced with the designation "Confidential - Attorneys' Eyes Only" shall receive the same treatment as if designated "CONFIDENTIAL - ATTORNEYS'

2

EYES ONLY" under this Order, unless and until such document is redesignated to have a different classification under this Order.

3.  With respect to documents, information or material designated "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" ("DESIGNATED MATERIAL"),[2] subject to the provisions herein and unless otherwise stated, this Order governs, without limitation: (a) all documents, electronically stored information, and/or things as defined by the Federal Rules of Civil Procedure; (b) all pretrial, hearing or deposition testimony, or documents marked as exhibits or for identification in depositions and hearings; (c) pretrial pleadings, exhibits to pleadings and other court filings; (d) affidavits; and (e) stipulations.[3] All copies, reproductions, extracts, digests, and complete or partial summaries prepared from any DESIGNATED MATERIALS shall also be considered DESIGNATED MATERIAL and treated as such under this Order. The protections conferred by this Order do not cover the following information: (a) any information that is in the public domain at the time of disclosure to a receiving Party or becomes part of the public domain after its disclosure to a receiving Party as a result of publication not involving a violation of this Order, including becoming part of the public record through trial or otherwise; and (b) any information known to the receiving Party prior to the disclosure or obtained by the receiving Party after the disclosure

---

[2]  The term DESIGNATED MATERIAL is used throughout this Protective Order to refer to the class of materials designated as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE," both individually and collectively.

[3]  For the avoidance of doubt, where the accuracy of information is confirmed only through the review of DESIGNATED MATERIAL, the fact that such information is accurate is DESIGNATED MATERIAL.  For example, the accuracy of unsubstantiated media speculations or rumors that are later confirmed to be accurate through access to DESIGNATED MATERIAL is not public information.

from a source who obtained the information lawfully and under no obligation of confidentiality to the designating Party.

4.     A designation of Protected Material (i.e., "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE") may be made at any time. Inadvertent or unintentional production of documents, information or material that has not been designated as DESIGNATED MATERIAL shall not be deemed a waiver in whole or in part of a claim for confidential treatment. In the event that a producing Party inadvertently fails to designate Protected Material, the producing Party shall promptly give written notice of such inadvertent production after discovering it (the "Inadvertent Production Notice") and shall promptly reproduce copies of the Protected Material that are labeled with the appropriate confidentiality designation. Upon receipt of an Inadvertent Production Notice and properly labeled Protected Material, the receiving Party shall promptly destroy the inadvertently produced Protected Material and all copies thereof or return such together with all copies of such Protected Material to counsel for the producing Party. Should the receiving Party choose to destroy such inadvertently produced Protected Material, the receiving Party shall notify the producing Party in writing of such destruction within 14 calendar days of receipt of written notice of the Inadvertent Production Notice and properly labeled Protected Material. This provision is not intended to apply to any inadvertent production of any document, material, or testimony protected by attorney-client or work product privileges.

5.     "CONFIDENTIAL" documents, information and material may be disclosed only to the following persons, except upon receipt of the prior written consent of the designating Party, upon order of the Court, or as set forth in paragraph 12 herein:

4

(a)    outside counsel of record in this Action[4] for the Parties;

(b)    employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action;

(c)    up to three (3) in-house counsel for the Parties who are members of good standing of at least one state bar and have responsibility for making decisions dealing directly with the litigation of this Action;

(d)    outside consultants or experts[5] (*i.e.*, not an existing employee or contractor of a Party, an affiliate of a Party, a current employee or contractor of a Party's competitor,[6] or—at the time of retention—any person who is anticipated to become an employee or contractor of a Party or of a Party's competitor) retained for the purpose of this litigation, provided that: (1) such consultants or experts are not presently employed by the Parties hereto for purposes other than this Action[7]; (2)

---

[4]   This "Action" means Case No. 6:21-cv-00755-ADA.

[5]   For any such person, the curriculum vitae shall identify (i) the full name of the consultant or expert and the city or state of his or her primary residence, (ii) his/her current employer(s), (iii) each person or entity from whom s/he has received compensation or funding for work in his or her areas of expertise or to whom the s/he has provided professional services, including in connection with a litigation, at any time during the preceding five years; (iv) (by name and number of the case, filing date, and location of court) any litigation in connection with which s/he has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five years; and (v) any patents or patent applications in which the expert or consultant is identified as an inventor or applicant, is involved in prosecuting or maintaining, or has any pecuniary interest. If such consultant or expert believes any of this information is subject to a confidentiality obligation to a third party, then s/he should provide whatever information can be disclosed without violating any confidentiality agreements, and the Party seeking to disclose Protected Material to the consultant or expert shall be available to meet and confer with the designating Party regarding any such engagement.

[6]   For purposes of this paragraph, a competitor is a for-profit business that operates in the virtual, augmented, or mixed-reality space in the fields of entertainment or consumer products.

[7]   For avoidance of doubt, an independent expert or consultant retained (as opposed to employed) by a Party on another litigation would not be precluded under this section.

5

before access is given, the consultant or expert has completed the "Acknowledgment and Agreement to Be Bound" attached as Exhibit A hereto, and the same is served upon the producing Party with a current curriculum vitae of the consultant or expert at least ten (10) days before access to the Protected Material is to be given to that consultant to object to and notify the receiving Party in writing that it objects to disclosure of Protected Material to the consultant or expert.[8] The Parties agree to promptly confer and use good faith to resolve any such objection. If the Parties are unable to resolve any objection, the objecting Party may file a motion with the Court within fifteen (15) days of the notice of objection, or within such other time as the Parties may agree, seeking a protective order with respect to the proposed disclosure. The objecting Party shall have the burden of proving the need for a protective order. No disclosure shall occur until all such objections are resolved by agreement or Court order[9];

(e)     independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services including mock jurors who have signed a confidentiality agreement and the "Acknowledgment and Agreement to Be Bound" (Exhibit A), and photocopy,

---

[8]   For the purposes of this paragraph, an outside consultant or expert is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to a consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single consultant or expert, provided that such personnel helping in the analysis of Protected Material shall be disclosed pursuant to this paragraph.

[9]   A party who has not previously objected to disclosure of Protected Material to an expert or whose objection has been resolved with respect to previously produced Protected Material shall not be precluded from raising an objection to an expert at a later time if new information about that expert is disclosed or discovered.

document imaging, translating, document review, and database services retained by

counsel and reasonably necessary to assist counsel with the litigation of this Action;

(f)     the Court and its personnel;

(g)     court reporters and their staff;

(h)     to witnesses during deposition or hearing testimony, as provided for in Paragraph

15 of this Order;

(i)      the author or recipient of a document containing the information or a custodian or

other person who otherwise possessed or knew the information; and

(j)     any mediator who is assigned to this matter, and his or her staff, who have signed

the "Acknowledgment and Agreement to Be Bound" (Exhibit A).

6.     A Party shall designate documents, information or material as "CONFIDENTIAL" only

upon a good faith belief that the documents, information or material contains confidential

or proprietary information or trade secrets of the Party or a Third Party to whom the Party

reasonably believes it owes an obligation of confidentiality with respect to such documents,

information or material.

7.     Documents, information or material produced in this Action, including but not limited to

Protected Material designated as DESIGNATED MATERIAL, and the knowledge of the

existence of such Protected Material (i) shall be used only for prosecuting, defending, or

attempting to settle this Action, (ii) shall not be used for any business purpose, in

connection with any other legal or administrative proceeding, including but not limited to

any proceeding at the U.S. Patent and Trademark Office (or any similar agency of a foreign

government), or directly or indirectly for any other purpose whatsoever, and (iii) shall not

be disclosed to any person who is not entitled to receive such Protected Material as herein

provided. For the avoidance of doubt, nothing in this Paragraph (or elsewhere in this Order) shall prevent any individual identified in Paragraph 5(a-d) of this Order from representing or otherwise acting on behalf of a Party in any contested proceeding involving any of the patents asserted in this Action before a domestic or foreign agency (including, but not limited to, a reissue protest, interference, post grant review, ex parte, or *inter partes* reexamination or review), except that any individual who reviews or otherwise gains knowledge of HIGHLY SENSITIVE MATERIAL shall not be involved, either directly or indirectly, in amending claims or drafting claims, subject to Paragraph 11 of this Order. All produced Protected Material shall be carefully maintained so as to preclude access by persons who are not entitled to receive such Protected Material, and any person or entity who obtains access to DESIGNATED MATERIAL or the contents thereof pursuant to this Order shall not make any copies, duplicates, extracts, summaries or descriptions of such DESIGNATED MATERIAL or any portion thereof except as may be reasonably necessary in the litigation of this Action. Any such copies, duplicates, extracts, summaries or descriptions shall be classified DESIGNATED MATERIALS and subject to all of the terms and conditions of this Order.

8.   To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, including but not limited to: proprietary design and development materials for products and/or services, sensitive products and/or services, confidential financial information, and strategic decision-making information, the producing Party may designate such Protected Material "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes or substantially incorporates or discloses

computer source code and/or live data (that is, data as it exists residing in a database or databases),[10] the producing Party may designate such Protected Material as "CONFIDENTIAL - SOURCE CODE" ("Source Code Material").

9.    For Protected Material designated CONFIDENTIAL - ATTORNEYS' EYES ONLY, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (d-j).

10.    For Protected Material designated CONFIDENTIAL - SOURCE CODE, the following additional restrictions apply:

(a)    Access to a Party's Source Code Material shall be provided only on "stand-alone" computer(s) (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet) in a secured locked room. The stand-alone computer(s) may only be located within the continental United States at an office of the producing Party's outside counsel or other location agreed by the parties. The stand-alone computer(s) shall have disk encryption and be password protected. Use or possession of any input/output device (e.g., USB memory stick, mobile phone or tablet, camera or any camera-enabled device, CD, floppy disk, portable hard drive, laptop, or any device that can access the Internet or any other network or external system, etc.) is prohibited while accessing the

---

[10]   "Source code" means source code, object code (i.e., computer instructions and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator), microcode, register transfer language ("RTL"), firmware, and hardware description language ("HDL"), as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, this includes source files, make files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, debug files, file names, and file paths.

9

stand-alone computer containing the Source Code Material. All persons entering the locked room containing the stand-alone computer(s) must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the stand-alone computer(s). The producing Party may periodically "check in" on the activities of the receiving Party's representatives during any stand-alone computer review and may visually monitor the activities of the receiving Party's representatives from outside the room in which the stand-alone computer(s) is located, but only to ensure that no unauthorized electronic records of the Source Code Material and no information concerning the Source Code Material are being created or transmitted in any way. Such checking in and monitoring shall not include viewing the contents of the computer screen, viewing any notes taken by the receiving Party, logging the receiving Party's keystrokes on the stand-alone computer(s), or any other attempt to record (visually, audibly, or by any other means) the activities of the receiving Party's representatives, absent permission from the receiving Party's representatives. The producing Party may not record (visually, audibly or by other means) the activities of the receiving Party's representatives;

(b)     The receiving Party shall make reasonable efforts to restrict its requests for such access to the stand-alone computer(s) to normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 5:00 p.m of the location in which the stand-alone computer is located. However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the stand-alone computer(s) outside of

10

normal business hours. The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the offices of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action;

(c)     The producing Party will produce Source Code Material in a computer searchable format on the stand-alone computer(s) as described above. The producing Party shall install tools that are sufficient for viewing and searching the code produced. The receiving Party's outside counsel and/or experts/consultants may request that commercially available software tools for viewing and searching source code be installed on the source computer, provided, however, that (a) the receiving Party possesses an appropriate license to such software tools; (b) the producing Party approves such software tools; and (c) review on such software is performed consistently with all of the protections herein. The producing Party shall approve reasonable requests for commercially available software tools. The receiving Party must provide the producing Party with the media, file path, or Advanced Package Tool package containing such licensed software tool(s) at least five (5) business days in advance of the date upon which the receiving Party wishes to have the additional software tools available for use on the stand-alone computer containing the Source Code Material. The producing Party shall make reasonable attempts to install the requested software but will not be held responsible for the proper setup, functioning, or support of any software requested by the receiving Party. By way of example, the producing Party will not compile or debug software for installation.

11

To the extent a deposition of a witness located in the United States[11] is likely to involve Source Code Material, the Party taking the deposition shall provide at least seven (7) calendar days written notice of that fact, and the producing Party will make a Source Code computer available at the deposition;

(d)     Access to Source Code Material and to the stand alone source code computer(s) shall be limited to outside counsel of record in this Action for the Parties, employees of such counsel assigned to and reasonably necessary to assist such counsel in the litigation of this Action, up to four[12] (4) outside consultants or experts (*i.e.*, not existing employees or affiliates of a Party or an affiliate of a Party) retained for the purpose of this litigation and approved to access such Protected Materials pursuant to paragraph 5(d) above, and those individuals in paragraph 5(e) and 5(f) above. Employees of outside counsel of record and individuals in paragraphs 5(d)-5(e) may not access Source Code Material unless they execute the "Acknowledgment and Agreement to Be Bound" in Exhibit A;

(e)     To the extent portions of Source Code Material are quoted in an electronic copy or image of a document which, pursuant to the Court's rules, procedures, or order, must be filed or served electronically ("Source Code Document"), either (1) the

---

[11]   At present time, neither Party is aware of any fact or expert witnesses outside of the United States whose deposition is likely to involve Source Code Material. To the extent that changes, the Party becoming aware of such fact should notify the other Party promptly. The Parties agree to discuss in good faith the appropriate protections for the use of a Source Code computer at such deposition, and/or travel of the relevant fact or expert witness to the United States.

[12]   Only one additional outside consultant or expert may be added to this section upon a showing of good cause by the Requesting Party and may not be added without prior written approval by the Producing Party. The Parties agree to meet and confer on whether good cause to add one additional outside consultant or expert exists. The total number of outside consultants or experts retained for the purpose of this litigation and approved to access Source Code Material and the stand alone source code computer(s) shall not exceed five (5).

entire Source Code Document will be stamped and treated as CONFIDENTIAL - SOURCE CODE or (2) those pages containing quoted Source Code Material will be separately stamped and treated as CONFIDENTIAL - SOURCE CODE;

(f) Except as set forth in paragraph 10(g), 10(h) and 10(j), no electronic copies or images of Source Code Material shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically, as discussed in the above paragraph.

(g) The receiving Party may create an electronic copy or image of limited excerpts of Source Code Material from Source Code Printouts as defined below in paragraph (i), only to the extent necessary to create Source Code Documents or any drafts of these documents.[13] Each excerpt may contain no more than 50 consecutive lines of Source Code Material. Source Code Documents may contain multiple excerpts of Source Code Material, but the receiving Party shall only include such excerpts as are reasonably necessary for the purposes for which such part of the Source Code Material is used. Apart from service of Source Code Documents, images or copies of Source Code Material shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers except to the extent permitted herein. The receiving Party may create an electronic image of a selected portion of the Source Code Material only when the electronic file containing such image has been

---

[13] Drafts shall only include those excerpts the Receiving Party reasonably believes may be included in the final version.

encrypted using commercially reasonable encryption software including password protection. The communication and/or disclosure of electronic files containing any portion of Source Code Material shall at all times be limited to individuals who are authorized to see Source Code Material under the provisions of this Protective Order. Additionally, all electronic copies must be labeled "CONFIDENTIAL - SOURCE CODE." If Source Code Documents are filed with the Court, they must be filed under seal in accordance with the Court's rules, procedures and orders, with the understanding that such documents cannot be encrypted or password protected when filed with the Court.

(h) Except as set forth in paragraphs 10(g), 10(j) and in this paragraph, no person shall copy, e-mail, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated "CONFIDENTIAL - SOURCE CODE" material. The receiving Party may request up to three (3) paper copies ("Source Code Printouts") of limited portions of the Source Code Material, but only if and to the extent reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial. In no event may the Receiving Party designate for printing more than (a) 25 consecutive pages, or (b) an aggregate total of more than 350 pages of source code during the duration of the case without prior written approval by the producing Party, which shall not be unreasonably withheld. The receiving Party shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph (a) in the first instance. Using the software available on the source code computer, the receiving Party shall create PDFs of the printed copies the receiving Party is requesting and

14

save them in a folder on the desktop named "Print Requests" with a subfolder identifying the date of the request. The PDF printouts must include identifying information including the full file path and file name, page number, line numbers, and date. The request for printed Source Code Material shall be served via email request identifying the subfolders of the "Print Requests" folder that the receiving Party is requesting. Within five (5) business days or such additional time as necessary due to volume requested, the Producing Party will provide the requested material on watermarked or colored paper bearing Bates numbers and the legend "CONFIDENTIAL - SOURCE CODE" unless objected to as discussed below. At the inspecting Party's request, up to two additional sets (or subsets) of printed source code may be requested and provided by the producing Party in a timely fashion. The producing Party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Paragraph 19 whereby the producing Party is the "requesting Party" and the receiving Party is the "designating Party" for purposes of dispute resolution, where requests above the aforementioned limits of consecutive pages of code and per-product aggregate pages of code would, per Paragraph 19, place the burden on the receiving Party to show such a request is reasonably necessary. However, provided that a request for printed source code otherwise complies with the other provisions of this Protective Order (including the aforementioned limits of consecutive pages of code), the producing Party may not withhold the requested Source Code Printouts.

(i)     If the receiving Party's outside counsel, consultants, or experts obtain Source Code Printouts, the receiving Party shall ensure that such outside counsel, consultants, or experts keep the Source Code Printouts under their direct control in a secured locked area in the offices or current working location of such outside counsel, consultants, or expert. The receiving Party may also temporarily keep the Source Code Printouts at: (i) the Court for any proceedings(s) relating to the Source Code Material, for the dates associated with the proceeding(s); (ii) the sites where any deposition(s) relating to the Source Code Material are taken, for the dates associated with the deposition(s); and (iii) any intermediate location reasonably necessary to transport Source Code Printouts to a Court proceeding or deposition, provided that the Source Code Printouts are kept in a secure manner that ensures access is limited to the persons authorized under this Order;

(j)     A producing Party's Source Code Material may only be transported by the receiving Party at the direction of a person authorized under paragraph 10(d) above to another person authorized under paragraph 10(d) above on paper via hand carry, Federal Express, or UPS, with tracking and signature required on receipt. Source Code Material may not be transported or transmitted electronically over a network of any kind, including a LAN, an intranet, or the Internet, except that Source Code Material may be transported electronically only as is reasonably necessary for filing any Source Code Material with the Court, serving such Source Code Material on another Party, or preparing any such documents to be filed with the Court or served on another Party;

16

(k)     The receiving Party's outside counsel and/or expert shall be entitled to take hand-written notes relating to the source code but may not copy source code into the notes, nor shall the receiving Party take such notes electronically on the Source Code Computer itself or any other computer. For avoidance of doubt, this does not apply to referencing single words or short phrases, file names, line numbers, or directory paths in such notes. No notes shall be made or stored on the inspection computer, or left behind at the site where the inspection computer is made available, and any such notes shall be deleted or destroyed by the producing Party, without reviewing the substance of the notes, upon discovery. Any notes permitted under this section shall be labeled and treated as "CONFIDENTIAL - SOURCE CODE". The notes or a log of such notes need not be produced to any other party absent Court Order (e.g. potentially in connection with a Protective Order violation motion);

(l)     A list of names of persons who will review Source Code Material on the standalone computer(s) will be provided to the producing Party in conjunction with any written (including email) notice requesting inspection. Prior to the first inspection of any Source Code Material on the stand-alone computer(s), the receiving Party shall provide five (5) business days' notice to schedule the initial inspection with the producing Party. The receiving Party shall provide five (5) business days' notice in advance of scheduling any additional inspections. Such notice shall include the names and titles for every individual from the receiving Party who will attend the inspection. The producing Party may maintain a daily log of the names of persons who enter the locked room to view the source code and when they enter and depart;

17

(m)     The receiving Party's outside counsel shall maintain a log of all copies of the Source Code Printouts that are delivered by the receiving Party to any person and a log of any electronic images of Source Code Material. The log shall include the names of the recipients and reviewers of copies, excluding the receiving Party's outside counsel, and locations where the copies are stored.  Upon three (3) business days advance written notice to the receiving Party by the producing Party, the receiving Party shall provide a copy of this log to the producing Party.  Further, upon request by the producing Party, the receiving Party shall provide reasonable assurances and/or descriptions of the security measures employed by the receiving Party and/or person that receives a copy of any portion of the source code;

(n)     All copies of any portion of the Source Code Printouts in whatever form shall be securely destroyed if they are no longer in use. Copies of Source Code Printouts that are marked as deposition exhibits shall not be provided to the Court Reporter or attached to deposition transcripts; rather, the deposition record will identify the exhibit by its production numbers; and

(o)     For Protected Material designated CONFIDENTIAL – SOURCE CODE, access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs 5(a-b) and (d-j), except that document reviewers in paragraph 5(e) shall not have access to Protected Material designated as CONFIDENTIAL-SOURCE CODE.

11.     Absent written consent from the designating Party, any individual who receives access to said Party's Protected Material that is designated CONFIDENTIAL - ATTORNEYS' EYES ONLY and/or CONFIDENTIAL - SOURCE CODE (collectively "HIGHLY

SENSITIVE MATERIAL"), who obtains, receives, has access to, or otherwise learns, in whole or in part, said Party's HIGHLY SENSITIVE MATERIAL under this Order ("Barred Persons") shall not be involved in the prosecution of patents or patent applications relating to (a) the non-public aspects of the subject matter of such HIGHLY SENSITIVE MATERIAL to which the individual received access or (b) the patents asserted in this Action and any patent or application claiming priority to or otherwise related to the patents asserted in this Action. For purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising, or otherwise affecting the scope or maintenance of patent claims in original prosecution or reissue proceedings, and directly or indirectly amending or drafting claims in contested proceedings as discussed below. To avoid any doubt, "prosecution" as used in this paragraph does not include representing a Party challenging or defending a patent in any contested proceeding before a domestic or foreign agency (including, but not limited to, a reissue protest, interference, post grant review, ex parte, or *inter partes* reexamination or review), except that any individual who reviews or otherwise gains knowledge of HIGHLY SENSITIVE MATERIAL shall not be involved, either directly or indirectly, in amending claims or drafting claims. This Prosecution Bar begins when the affected individual first reviews or otherwise gains knowledge of HIGHLY SENSITIVE MATERIAL and ends two (2) years after final termination of this action.

12. Disclosure of Protected Material shall be subject to all applicable laws and regulations relating to the export of technical data contained in such Protected Material, including the release of such technical data to foreign persons or nationals in the United States or elsewhere. Each party receiving Protected Material shall take measures necessary to ensure

compliance with applicable export control statutes and regulations, including confirming that no unauthorized foreign person has access to such technical data. See, e.g., 15 CFR 734.2(b).

    (a)    No Protected Material of Defendants may leave the territorial boundaries of the United States of America or be made available to any foreign national who is not (i) lawfully admitted for permanent residence in the United States or (ii) identified as a protected individual under the Immigration and Naturalization Act (8 U.S.C. 1324b(a)(3)). Without limitation, this prohibition extends to Protected Material of Defendant(s) (including copies) in physical and electronic form. The viewing of Protected Material through electronic means outside the territorial limits of the United States of America is similarly prohibited. The restrictions contained within this sub-paragraph may be amended through the consent of the producing Party to the extent that such agreed to procedures conform with applicable export control laws and regulations, and the producing Party agrees to consider any such amendment in good faith. Nothing in this paragraph is intended to remove any obligation that may otherwise exist to produce documents currently located in a foreign country.

13.    Nothing in this Order shall require production of documents, information or other material, including accompanying metadata, that a Party contends is protected from disclosure by the attorney-client privilege, the work product doctrine, the joint defense or common interest privilege, privacy laws and regulations, or other privilege, doctrine, or immunity. The Parties and Court intend to enter a separate Order under Fed. R. Evid. 502(d) that governs the production of documents protected from discovery.

14.     There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized

        to have access thereto to any person who is not authorized for such access under this Order.

        The Parties are hereby ORDERED to safeguard all such documents, information, and

        material to protect against disclosure to any unauthorized persons or entities.

15.     Nothing contained herein shall be construed to prejudice any Party's right to use any

        DESIGNATED MATERIAL in taking testimony at any deposition or hearing provided

        that the DESIGNATED MATERIAL is only disclosed to a person(s) who is: (i) eligible to

        have access to the DESIGNATED MATERIAL by virtue of his or her employment with

        the designating party; (ii) identified in the DESIGNATED MATERIAL as an author,

        addressee, or copy recipient of such information; (iii) although not identified as an author,

        addressee, or copy recipient of such DESIGNATED MATERIAL, has or likely would

        have, in the ordinary course of business, seen such DESIGNATED MATERIAL; (iv)

        designated as a witness for the Producing Party under Federal Rule of Civil Procedure

        30(b)(6); (v) court reporters and videographers; (vi) the Court; or (vii) other persons

        entitled hereunder to access to DESIGNATED MATERIAL. DESIGNATED MATERIAL

        shall not be disclosed to any other persons unless prior authorization is obtained from

        counsel representing the producing Party or from the Court.[14] The receiving Party shall

        give the producing Party and the Court notice, either before or during the hearing, in

---

[14] In the event a non-Party witness is authorized to receive Protected Material that is to be used during his/her deposition but is represented by an attorney not authorized under this Order to receive such Protected Material, the attorney must provide prior to commencement of the deposition an executed Acknowledgement and Agreement to Be Bound attached as Exhibit A. In the event such attorney declines to sign the "Acknowledgment and Agreement to Be Bound" prior to the examination, the Parties, by their attorneys, shall jointly seek a protective order from the Court prohibiting the attorney from disclosing Protected Material in order for the deposition to proceed.

advance of disclosing or displaying Protected Material at an open hearing or other public proceeding such that the producing Party has the ability to request the courtroom be sealed.

16. Parties may, at the deposition or hearing or within thirty (30) days after receipt of a deposition or hearing transcript, designate the deposition or hearing transcript or any portion thereof as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE" pursuant to this Order. Access to the deposition or hearing transcript so designated shall be limited in accordance with the terms of this Order. Until expiration of the 30-day period, the entire deposition or hearing transcript shall be treated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY". To the extent a deponent gives testimony regarding Protected Material, unless the Parties agree otherwise, that testimony must be treated in accordance with the level the Protected Material was designated regardless of whether the testimony itself receives express designation at or after the deposition. Parties shall give the other Parties notice if they reasonably expect a deposition or other pretrial or trial Court proceeding to include Protected Material so that the other Parties can ensure that only authorized individuals who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A) are present at those proceedings. The use of Protected Material as an exhibit at a deposition or other pretrial proceedings will not in any way affect its designation as "CONFIDENTIAL," "CONFIDENTIAL - ATTORNEYS' EYES ONLY," or "CONFIDENTIAL - SOURCE CODE."

17. Any DESIGNATED MATERIAL that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court. The filing party shall be responsible for informing the Clerk of the Court that the filing should be sealed and for placing the

legend "FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER" above the caption and conspicuously on each page of the filing. Exhibits to a filing shall conform to the labeling requirements set forth in this Order. If a pretrial pleading filed with the Court, or an exhibit thereto, discloses or relies on confidential documents, information or material, such confidential portions shall be redacted to the extent necessary and the pleading or exhibit filed publicly with the Court.

18.     The Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the Parties from introducing any DESIGNATED MATERIAL into evidence at the trial of this Action, or from using any information contained in DESIGNATED MATERIAL at the trial of this Action, subject to any pretrial order issued by this Court.

19.     A Party may request in writing to the other Party that the designation given to any DESIGNATED MATERIAL be modified or withdrawn. If the designating Party does not agree to redesignation within ten (10) days of receipt of the written request, the requesting Party may apply to the Court for relief. Upon any such application to the Court, the burden shall be on the designating Party to show why its classification is proper. Such application shall be treated procedurally as a motion to compel pursuant to Federal Rule of Civil Procedure 37, subject to the Rule's provisions relating to sanctions. In making such application, the requirements of the Federal Rules of Civil Procedure and the Local Rules of the Court shall be met. Pending the Court's determination of the application, the designation of the designating Party shall be maintained.

20.     Each outside consultant or expert to whom DESIGNATED MATERIAL is disclosed in accordance with the terms of this Order shall be advised by counsel of the terms of this Order, shall be informed that he or she is subject to the terms and conditions of this Order,

and shall sign an acknowledgment that he or she has received a copy of, has read, and has agreed to be bound by this Order. A copy of the Acknowledgment and Agreement to Be Bound form is attached as Exhibit A.

21. To the extent that any discovery is taken of persons who are not Parties to this Action ("Third Parties") and in the event that such Third Parties contend the discovery sought involves trade secrets, confidential business information, or other proprietary information, then such Third Parties may agree to be bound by this Order.

22. To the extent that discovery or testimony is taken of Third Parties, the Third Parties or any Party may designate as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" any documents, information, or other material, in whole or in part, produced or given by such Third Parties. The Third Parties and any Party shall have ten (10) days after production of such documents, information or other materials to make such a designation. Until that time period lapses or until such a designation has been made, whichever occurs sooner, all documents, information or other material so produced or given shall be treated as "CONFIDENTIAL - ATTORNEYS' EYES ONLY" in accordance with this Order. Where a Third Party designates any documents, information or other material as provided herein, experts previously disclosed and approved hereunder prior to said Third Party's production of any Protected Material need not be disclosed to said Third Party. Subsequently disclosed experts need not be disclosed to said Third Party before that Third Party's Protected Material may be disclosed thereto. In addition, in the event that a Party is required, by a valid discovery request in this Action, to produce a Third Party's confidential information in the Party's possession, and the Party is subject to an agreement with the Third Party not to disclose the Third Party's information, then the Party shall: (i) promptly

24

notify in writing the receiving Party and the Third Party that some or all of the information requested is subject to a confidentiality agreement with a Third Party and (ii) promptly provide the Third Party with a copy of this Protective Order, the relevant discovery request(s), and a reasonably specific description of the information requested. If the Third Party fails to object or seek a protective order from this court within the longer of (i) twelve (12) business days after receiving the notice and accompanying information, or (ii) any contractual notice period in an agreement between the producing Party and the Third Party covering the confidentiality and/or disclosure of the information requested, the producing Party may produce the Third Party's confidential information responsive to the discovery request. If the Third Party timely seeks a protective order, the producing Party shall not produce any information in its possession or control that is subject to the confidentiality agreement with the Third Party before a determination by the Court.

23.     If a Party is served with a subpoena issued by a court, arbitral, administrative, or legislative body, or with a court order issued in other litigation that compels disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - SOURCE CODE" that Party must:

(a)     promptly notify in writing the designating Party. Such notification shall include a copy of the subpoena or court order and shall be provided at least twelve (12) business days prior to the deadline for production of such materials if reasonably possible;

(b)     promptly notify in writing the person who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order

25

is subject to this Protective Order. Such notification shall include a copy of this Protective Order; and

(c)     cooperate with respect to all reasonable procedures sought to be pursued by the designating Party whose Protected Material may be affected. If the designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL - ATTORNEYS' EYES ONLY" or "CONFIDENTIAL - SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the designating Party's permission. The designating Party shall bear the burden and expense of seeking protection in that court of its confidential material, and nothing in these provisions should be construed as authorizing or encouraging a receiving Party in this action to disobey a lawful directive from another court. Any agreement by a designating Party that Protected Material may be produced in response to a subpoena does not in any way waive the protections this Protective Order provides against disclosure in any other litigation

24.    Within thirty (30) days of final termination of this Action, including any appeals, all DESIGNATED MATERIAL, including all copies, duplicates, abstracts, indexes, summaries, descriptions, and excerpts or extracts thereof (excluding excerpts or extracts incorporated into any privileged memoranda or attorney work product of the Parties and materials which have been admitted into evidence in this Action), shall either be returned to the producing Party or be destroyed. Notwithstanding the foregoing, outside counsel for each Party may retain an archival copy of all pleadings, briefs, memoranda, motions, and

other documents filed with the Court that refer to or incorporate DESIGNATED MATERIAL, and will continue to be bound by this Order with respect to all such retained information. Further, attorney work product materials that contain DESIGNATED MATERIAL need not be destroyed, but, if they are not destroyed, such materials remain subject to this Order and any person in possession of the attorney work product will continue to be bound by this Order with respect to all such retained information. The receiving Party shall verify the return or destruction by affidavit furnished to the producing Party, upon the producing Party's request. Nothing in this Paragraph or this Order requires the receiving Party to delete DESIGNATED MATERIAL which resides on one or more backup media maintained for purposes of disaster recovery or business continuity purposes, except that the parties agree that all such DESIGNATED MATERIAL will continue to be protected under this Order.

25.    The failure to designate documents, information or material in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order and/or the production of documents, information and material hereunder shall in no way constitute a waiver of any objection to the furnishing thereof, all such objections being hereby preserved.

26.    Any Party knowing or believing that any other Party is in violation of or intends to violate this Order and has raised the question of violation or potential violation with the opposing Party and has been unable to resolve the matter by agreement may move the Court for such relief as may be appropriate in the circumstances, including emergency relief under the Court's procedure for resolution of discovery disputes.   Pending disposition of the motion

by the Court, the Party alleged to be in violation of or intending to violate this Order shall discontinue the performance of and/or shall not undertake the further performance of any action alleged to constitute a violation of this Order.

27.     Production of DESIGNATED MATERIAL by each of the Parties shall not be deemed a publication of the documents, information and material (or the contents thereof) produced so as to void or make voidable whatever claim the Parties may have as to the proprietary and confidential nature of the documents, information or other material or its contents.

28.     Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the Parties to assert any applicable discovery or trial privilege.

29.     Each of the Parties shall also retain the right to file a motion with the Court (a) to modify this Order to allow disclosure of DESIGNATED MATERIAL to additional persons or entities if reasonably necessary to prepare and present this Action and (b) to apply for additional protection of DESIGNATED MATERIAL.

It is SO ORDERED this _____15th_____ day of _____April_____, 20__22__.



_____
Honorable Alan D Albright
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| GENTEX CORPORATION and INDIGO TECHNOLOGIES, LLC,<br><br>          Plaintiffs,<br><br>THALES VISIONIX, INC.,<br><br>          Involuntary Plaintiff,<br><br>      v.<br><br>FACEBOOK, INC. and FACEBOOK TECHNOLOGIES, LLC,<br><br>          Defendants. | Case No. 6:21-cv-00755-ADA<br><br>**JURY TRIAL DEMANDED** |

## <u>EXHIBIT A</u>
## <u>ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND</u>

I, _____, declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Western District of Texas in the case of *Gentex Corp. et al. v. Meta Platforms, Inc.*, Case No. 6:21-cv-00755. I agree to comply with and to be bound by all the terms of this Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Western District of Texas for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this action.

-1-

Printed name:_____

Title:_____

Address:_____

Signature:_____

Date:_____